**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|                                   |   |                                      |
|-----------------------------------|---|--------------------------------------|
| PAULO SERODIO,                    | : |                                      |
|                                   | : | **Civil Action No. 09-2221 (SRC)**   |
|                        Plaintiff, | : |                                      |
|                                   | : |                                      |
|                    v.             | : | **OPINION**                          |
|                                   | : |                                      |
| UNIVERSITY OF MEDICINE AND        | : |                                      |
| DENTISTRY OF NEW JERSEY, et al.,  | : |                                      |
|                                   | : |                                      |
|                       Defendants. | : |                                      |

---

**CHESLER**, District Judge

This matter comes before the Court upon the motion for partial summary judgment filed by Defendant University of Medicine and Dentistry of New Jersey ("UMNDJ"), as well as the various individual Defendants,[1] who are affiliated with UMDNJ.  Plaintiff Paulo Serodio ("Plaintiff" or "Serodio") has opposed the motion.  The Court has considered the papers filed by the parties and proceeded to issue its ruling based on the written submissions and without oral argument, as authorized by Federal Rule of Civil Procedure 78.  For the reasons expressed below, the motion for partial summary judgment will be granted.

---

[1] The individuals named as Defendants are as follows:  Robert L. Johnson, M.D., Thomas Cohen, M.D., Kathy Ann Duncan, M.D., Linda Boyd, D.O., Julie Ferguson, M.B.A., Catherine Bolder, Lisa Pompeo, M.D., Denise V. Rodgers, M.D. and Marjorie Brandriss, Ph.D.  Together with Defendant UMDNJ, the individual Defendants will collectively be referred to as "Defendants."

1

I.    BACKGROUND

According to the Amended Complaint, this is an action seeking relief for the alleged

violation of Plaintiff's civil rights stemming from Serodio's statements about race and identity

that he expressed to the UMDNJ community. The facts giving rise to this lawsuit are as follows:

In 2006, while a student at UMDNJ's medical school, Serodio made various oral and

written comments concerning his self-identification as a "white, African-American." (Serodio

Decl., ¶ 2-3.) Serodio, who was born in Mozambique, first made this comment in May 2006 in a

course entitled Cultural Diversity, during a class discussion in which students were asked to

define themselves and their culture.  He made comments of the same nature again in the fall of

2006 during a similar class exercise.  Serodio acknowledges that his statements caused

controversy and were upsetting to some students.  According to Serodio, his comments led to

confrontations with faculty and students, who challenged his use of the term "African-American"

to define himself.  He also asserts that he was harassed as a result of the comments, including

having his car vandalized by some unidentified students.  Serodio attempted to respond to this

perceived animosity and to explain his viewpoint in an essay he submitted for publication in

UMDNJ's newspaper.  Serodio asserts that he was warned not to publish the essay and told by

UMDNJ's dean of student affairs, Dr. Thomas Cohen, that if he did "his life and career would

suffer irreparably," assertions which Dr. Cohen denies.  (Serodio Decl., ¶ 28; Cohen Cert., ¶ 2.)

The article was nonetheless published in the December 2006 issue of the newspaper.  In it,

Serodio wrote that he endured "open racial prejudice" from his UMDNJ peers as well as the

faculty.  (Soto-Green Decl., ¶ 4; Serodio Decl., ¶ 3.) Shortly thereafter, in an email dated

December 27, 2006 and directed to all medical school students, Serodio stated that he intended to speak at an upcoming student function but feared that he would be hung by a "lynch mob" of people who disagree with his point of view.  (Soto-Greene Decl., ¶ 5; Serodio Decl., ¶ 4.)

On about January 7, 2007, Dr. Cohen sent Serodio a written warning of disciplinary action for, among other things, his misuse of UMDNJ's intranet in violation of the school's written policy concerning electronic information systems and his failure to conform to the school's code of professional conduct.  Days later, Serodio posted a summary of his lecture notes, known in the medical school as "scribe notes," from an obstetrics/gynecology course on a UMDNJ-owned website, accessible by medical students to share and review scribe notes. The parties agree that, in accordance with the usual procedure, Serodio had submitted, before posting online, his draft scribe notes to Dr. Lisa Pompeo, the professor who gave the lecture for her approval.  They disagree, however, as to the contents of the scribe notes ultimately posted. Serodio contends that the draft Dr. Pompeo approved contained "pictures, cartoons and commentary" intended to be humorous.  Defendants maintain it was only after Dr. Pompeo reviewed the scribe notes and returned them to Serodio with corrections, that Serodio "added several sexually explicit and racially charged pictures, cartoons and commentary and then proceeded to post the scribe notes on [the website] as though they had been approved by Dr. Pompeo."  (Soto-Greene Decl., ¶ 7.)

On January 19, 2007, after the scribe notes deemed offensive by UMDNJ standards were posted by Serodio, Dr. Cohen wrote to the medical school dean, asking that formal disciplinary proceedings against Serodio be initiated.  His complaint against Serodio was thereafter supplemented to include a second set of scribe notes, posted by Serodio on January 28, 2007,

which included similar content to the first-posted set.  The disciplinary complaint also included a professionalism complaint submitted by Dr. Pompeo.  A hearing body on the disciplinary proceedings was convened, and based on its review of the evidence, the hearing body issued an interim recommendation that Serodio obtain a psychological evaluation.  Plaintiff admits that he did not submit to the psychological evaluation but maintains that it was because he could not agree to the general release of medical information required as a condition of the evaluation. Ultimately, the hearing body concluded that Serodio violated UMDNJ's electronic use policy and failed to demonstrate professional behavior as described in the medical school's code of professional conduct and the written policy of student rights and responsibilities.  Serodio exercised his right of appeal but failed.  The hearing body's findings were upheld, and Serodio was disciplined with a one-year suspension from the medical school, lasting until June 2008.

Following his period of suspension, Serodio requested and was granted two consecutive one-year leaves of absence.  When he resumed his matriculation in June 2010, Serodio fared poorly.  It is uncontested that he failed at least three of the seven required "SHELF" exams, standardized subject tests published by the National Board of Medical Examiners.  Defendants contend that he failed a fourth exam in the subject of pediatrics, while Serodio maintains that he did not fail but rather earned a zero grade when he was deregistered from the class. Additionally, several professionalism complaints about Serodio were filed, including one he filed against himself.  In July 2011, Plaintiff again requested and was granted a medical leave of absence.

Thereafter, a committee convened to consider whether Serodio should be dismissed for academic insufficiency.  While first convened in September 2011, the committee decided to

defer consideration of Serodio's dismissal until such time as he was due to return from his medical leave or was otherwise available to participate in proceedings.  A meeting was held in December 2011, at which both Serodio and faculty members were permitted to speak and address the issues. After considering the evidence, the committee determined that Serodio should be dismissed from the medical school.  It found that his failing grades warranted dismissal and further noted the various professional complaints which had been lodged against him.  Serodio pursued an appeal through UMDNJ's process.  The decision to dismiss him on grounds of academic insufficiency was affirmed.

Plaintiff filed this lawsuit in federal court asserting a number of civil rights claims pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983 and Title VI, 42 U.S.C. § 2000d.  He bases this action on the theory that the disciplinary actions taken against him by UMDNJ were retaliatory acts of discrimination against him on the basis of being African-American and on the basis of expressing his views on his race and ethnicity.[2]  He also pleads for relief pursuant to state law, including the New Jersey Law Against Discrimination.

---

[2] Although the Amended Complaint, which was filed in 2009, sets forth factual allegations pertaining only to the one-year suspension, the parties have litigated the action as if the claims for relief were also predicated upon the 2011 dismissal of Serodio from UMDNJ.  Defendants' motion for summary judgment recites the events of Serodio's re-matriculation, including his academic performance during the 2010-2011 school year and the proceedings regarding his termination from UMDNJ, as facts material to their Rule 56 motion.  Indeed, as the Court will discuss below, the motion seeks to cut off the damages Plaintiff may obtain by arguing that there is an intervening, superseding cause of his dismissal from the medical school.  As such, the Court will consider the Amended Complaint amended by the parties' implied consent, pursuant to Rule 15(b), to include the fact of Plaintiff's termination.  See Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings,"); Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 676 F.3d 318, 326-27 (3d Cir. 2012) (assuming, without holding, that Rule 15(b)(2) applies at the summary judgment stage and noting, despite the circuit split on the issue, that several other circuits have held that the rule may apply to a summary judgment motion, so long as doing so does not cause prejudice).

## II.   DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

**B. Summary of Arguments**

Defendants' motion for partial summary judgment takes the position that even if, for the sake of argument, one assumes that Serodio's one-year suspension in 2007 was the result of discrimination, retaliation and harassment, as the Amended Complaint alleges, the injury he claims – delay of his education and adverse impact on his career – is limited and to a great extent superseded (or as Defendants assert "extinguished") by his dismissal from the medical school for

reasons unrelated to the alleged discrimination.  In other words, they seek partial summary judgment on Serodio's claims to the extent he seeks recovery for the damages flowing from the termination.  Defendants argue that Plaintiff cannot as a matter of law establish the requisite causal connection between the allegedly discriminatory suspension in 2007, precipitated according to Plaintiff by his classroom and newspaper comments in 2006, and the 2011 dismissal based on academic insufficiency.  They point to evidence demonstrating that Plaintiff in fact failed several crucial exams in his third year of medical school and that, following the established process for review of a student's deficient academic performance, a decision was made to terminate his enrollment on that basis.  Partial summary judgment is warranted, according to Defendants, because the superseding event of Serodio's academic failure, together with the remoteness in time between the allegedly retaliatory suspension and Serodio's dismissal from the medical school necessarily severs any connection between the alleged discriminatory acts and Serodio's claim of injury from the termination.

In response, Plaintiff argues that, even if proximate cause were an essential element of his claims for relief for civil rights violations – and he expressly notes that he does not concede this point – the question of proximate cause is a factual matter properly left to the jury for its determination.  Plaintiff asserts in his Declaration that he endured continued harassment upon returning to the same institution that improperly suspended him for his comments on race and ethnicity.  In his brief, he maintains that "a reasonable juror could connect the dots [between the 2007 suspension and] the resulting stress, humiliation, pain and suffering." (Pl. Br. at 8.)  He further asserts that his academic failures in the 2010 to 2011 school year were the result of stress caused by the continued harassment.

### C.   Analysis

Proximate cause is an essential element of a claim to recover for constitutional and civil

rights violations as well as for torts.   Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004)

(holding that tort law causation analysis serves as basis for determining causation in actions for

violation of constitutional rights against state actors as well as federal officials); Hector v. Watt,

235 F.3d 154, 160 (3d Cir.2000) (holding that the common law of proximate causation applies to

§ 1983 claims).  The Third Circuit, applying a tort causation analysis to a federal claim for

deprivation of due process rights, has summarized the concept of proximate cause as follows:

> Traditionally, in tort law, "proximate cause" has been defined as a person's
> wrongful conduct which is a substantial factor in bringing about harm to
> another. However, an intervening act of a third party, which actively
> operates to produce harm after the first person's wrongful act has been
> committed, is a superseding cause which prevents the first person from
> being liable for the harm which his antecedent wrongful act was a
> substantial factor in bringing about.

Egervary, 366 F.3d at 246.

Defendants have indeed pointed to the absence of evidence which would permit Plaintiff

to establish that the allegedly discriminatory act of suspending Plaintiff was a substantial factor

in bringing about any injuries related to his dismissal from the medical school in 2011.  The

sheer length of time between the events could, by itself, negate a causal nexus between the

comments made by Plaintiff regarding his race and his ultimate termination from the medical

school and any injuries flowing therefrom.  See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503

(3d Cir. 1997) (noting, in the context of an employment retaliation case, that a time lapse of 19

months between the protected conduct and adverse action was sufficiently protracted such that

the plaintiff could not, without other evidence, establish a causal link).  This is particularly so

where there is no evidence, as is the case here, of intervening antagonism by Defendants.  Id. at 503-04.  In this regard, the Court notes that Serodio asserts that he faced continued harassment upon his re-matriculation in 2010 but fails to point to any examples of antagonistic behavior by Defendants or present evidence that might support his belief that such harassment (accepting Serodio's characterization for the sake of argument) was related to his 2006 conduct leading to the suspension.  It is well-settled that, to survive a motion for summary judgment, the non-moving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

Perhaps of most significance to the Court's finding that Defendants have carried their Rule 56 burden as to claims and injuries related to the dismissal is the evidence supporting a superseding cause of the dismissal.  Apart from the remoteness in time between Defendants' allegedly offending conduct and Serodio's termination as well as the lack of any evidence that Plaintiff was subjected to continued harassment and discrimination upon his re-matriculation, Defendants affirmatively proffer evidence supporting an intervening act resulting in Plaintiff's dismissal – his inadequate academic performance.  Serodio has made no effort, in attempting to withstand this motion for summary judgment, to show that the proffered non-discriminatory basis for his dismissal could be considered by a jury to be pretextual.  Nor does he adduce any evidence in support of his self-serving declaration asserting that his inability to attain a passing score on various critical exams and/or his otherwise poor performance in the 2010-2011 school year were the result of stress he was caused to suffer by Defendants' alleged harassment, antagonism and/or discrimination.  He offers no documentation by any heath professional

concerning the stress.  Plaintiff's own opinion that his stress was attributable to Defendants'
alleged misconduct and, further, that such stress prevented him from fulfilling his academic
requirements does not suffice to create a genuine issue as to any purported causal relationship
between the claimed mental and/or emotional health injury and his deficient performance as a
medical student.  The capacity to draw this conclusion, which is at the heart of Plaintiff's attempt
to defeat summary judgment, is beyond the ken of an average juror, and thus expert testimony
would be required.  See Fed. R. Evid. 702. Indeed, to establish both the existence of such an
injury inflicted, according to Plaintiff, by Defendants' retaliatory and discriminatory conduct, as
well as any causal relationship between the stress and academic failure, Plaintiff would have to
present the expert testimony of a mental health professional with specialized knowledge on, at
the very least, the effects of stress on academic performance.  In short, on the subject of the
relationship between Defendants' alleged misconduct and his ultimate termination from
UMDNJ, Plaintiff's self-serving declaration contains merely conclusory statements, unsupported
by any independent evidence, and fails to satisfy his burden of defeating Defendants' Rule 56
motion.  Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002) (holding that
"conclusory, self-serving affidavits are insufficient to withstand a motion for summary
judgment.").

    Defendants have demonstrated, as required by Rule 56(a), that no reasonable factfinder
could determine, based on the evidence of record, that there is a causal connection between the
allegedly discriminatory acts of Defendants and any injuries related to or flowing from Serodio's
ultimate dismissal from UMDNJ.  To the extent Plaintiff's claims seek relief for such injuries,
summary judgment in favor of Defendants is warranted.   Plaintiff's claims and the damages he

may pursue are thus limited to the harm he can prove was proximately caused by the allegedly

retaliatory one-year suspension imposed in 2007.

**III.    CONCLUSION**

For the reasons discussed, Defendants' motion for partial summary judgment will be

granted.  The claims and damages Plaintiff may pursue will be limited according to the foregoing

analysis.

    s/ Stanley R. Chesler

STANLEY R. CHESLER

United States District Judge

Dated: October 1, 2013